16817

STATE v. GORDON
(79 S. E. (2d) 869)

*A. L. King, Esq.,* of Georgetown, *for Appellant,*

*Frank A. McLeod, Esq., Solicitor,* of Sumter, *for Respondent.*

January 7, 1954.

TAYLOR, Justice.

Appellant was tried and convicted of having in possession unstamped liquors in violation of Section 4-91 of the 1952 Code of Laws for South Carolina and now appeals to this Court.

Appellant contends first that he was denied a fair and impartial trial in that the prosecuting attorney planted in the mind of a prosecuting witness the answers to his questions.

On the day of his arrest, appellant, Joe Gordon, and Freddie Barnwell were riding along one of the streets of Hemingway, S. C., in Barnwell's car with Barnwell driving when they were stopped by an officer who had been looking

for this car as a result of previously obtained information. While the officer was checking the driving license of Barnwell, appellant left the scene but was apprehended a few minutes later on another street. Upon searching the car, five half-gallon jars and one quart jar of untaxed liquor were found in the rear compartment. Both the driver, Barnwell, and appellant denied ownership and denied knowing that it was in the car. Upon trial of the case, the following transpired:

"Q. State whether or not you were looking for Joe Gordon? A. I was sitting down the road waiting for him to come in, and about eight-thirty or nine—

"Mr. King: Your Honor, I object to that question and answer, and move it be stricken, ask him to state what he was doing.

"By the Solicitor:

"Q. What were you doing? A. I was sitting down the street waiting for them to come in.

"Q. Who were you waiting for? A. Joe Gordon and Freddie Barnwell, and when they come by I turned around and followed them to the red light and they turned to the right towards Joe's house.

"Q. Both of these men? A. Yes, sir.

"Q. Where was Joe? A. Joe Gordon was sitting in the car with Freddie Barnwell.

"Q. They turned in which direction? A. On the right, Joe lives right over the railroad, and I stopped them about a half block from Joe's house, I was checking Freddie's driving license and went to check the car and Joe slipped off behind a building. Well, I went to the trunk and it was partly cracked open, not shut down tight, and I started to pick it up and Freddie says it is locked, and I pulled it up and got five half gallons of liquor and a quart, in a crocus sack.

"Q. Is this the liquor? A. Yes, sir.

"The Solicitor: Offers it in evidence.

"The Court: Received without objection.

"By the Solicitor:

"Q. Did that happen in Williamsburg County? A. Yes, sir.

"Q. Did you arrest Gordon? A. I took Freddie and the whiskey and put him in my car and I had to go around the next block to get Joe, and when I got him in the car, he says, I ought not to let him put that liquor in my car.

"Q. Whose car was it? Who said that in the presence of Joe? A. Well, Joe wasn't in there, he said it in my presence.

"Mr. King: I move it be stricken, Your Honor.

"The Court: Motion granted.

"By the Solicitor:

"Q. Did you get Joe? A. Yes, sir. Caught him around the next block.

"Q. Did you see Joe in the car? A. Yes, sir.

"Q. Did you see him when he slipped out? A. Well, when he got out I was checking Freddie's driving license and Joe stepped out on one side and Freddie the other, and when I went back, to the back to get the liquor out, Joe slipped off around the back of a building.

"Q. How long after that before you got him? A. It was about three or four minutes, I guess, just quick enough that I could crank up and drive around the block.

"Q. What did you do? A. I arrested him and put him in the back and carried him to jail.

"Q. Did you ask him anything about the liquor? A. Well, I did.

"Q. Were they both present? A. Yes, sir.

"Q. What did they say? A. They didn't know nothing about it being in there.

"Q. Neither one? A. Neither one.

"Q. Anything else? A. No, sir."

The foregoing related testimony is relied upon by appellant to support his contention that he was denied a fair and impartial trial. Some of the questions, of course, were improper but when objected to were immediately remedied or the objection sustained by the trial Judge

and ordered stricken upon motion of appellant's counsel. There was no motion for a mistrial but even had there been and refused we see no merit in this contention.

Appellant next contends that the evidence was insufficient to sustain the verdict of guilty.

The State placed upon the stand the driver of the car, Freddie Barnwell, who testified that the liquor belonged to Joe Gordon and that he, himself, had no knowledge concerning it whatever. Upon cross-examination the witness was forced to admit that he had told appellant's counsel on numerous occasions prior to the trial that appellant had no interest in the liquor and had decided only a short while before to testify that the liquor belonged to appellant. Such evidence, of course, is not the strongest kind of evidence to sustain a conviction under the circumstances related; however, it requires no citation of authority for the proposition that the weight of such testimony is a matter entirely within the province of the jury. They had the benefit of seeing the witness on the stand, saw his demeanor and reactions to the questions propounded and it is not within the province of this Court to say that such testimony was without value. Indeed, he might have only a short time before decided to tell the truth rather than an untruth. Be that as it may, it was a question entirely for the jury and there is no merit in this contention.

We are of the opinion that the judgment and sentence appealed from should be affirmed and it is so ordered.

BAKER, C. J., STUKES and OXNER, JJ., and BRAILSFORD, Acting Associate Justice, concur.